ORAMEL C. WEST *vs.* THOMAS HAYES.

The statute (Gen. Statutes, p. 440, sec. 34,) provides that "when any suit
has been heard and determined by any justice of the peace who shall
have neglected to make up a record of the same, his files and minutes
thereof shall be admissible as evidence in all actions brought on such
judgment after his decease or removal from the state." Held that under
the statute it is not necessary that the minutes should be technically
full and accurate, but that it is enough if they satisfy the triers that a
judgment of a certain amount was actually rendered.

In a suit on a judgment rendered by a justice of the peace who had since
died, the plaintiff produced in evidence a writ in his favor against the
present defendant, which was found among the papers of the justice,
dated May 12th, 1869, returnable on the 29th of May, with the officers
return of service on the defendant; also, pinned to the writ, a bill in
favor of the plaintiff against the defendant for $100; also, (where
found it did not appear,) an execution signed by the justice in favor of
the plaintiff against the defendant, dated May 31st, 1869, which stated
that it was issued on a judgment rendered by the justice on that day,
and which was for $100 damages and $4.01 costs, the officer's endorse-
ment on it showing a demand on a garnishee who was named in the
writ. It did not appear that any other writ had ever been issued in
favor of the plaintiff against the defendant. Held that the evidence
was admissible, and that it warranted a finding that the judgment
claimed was rendered.

The writ being returnable on the 29th of May and the judgment rendered
on the 31st, the court would presume a legal adjournment to the latter
day.

[Argued January 17th—decided March 28th, 1884.]

ACTION on a judgment rendered by a justice of the peace; brought to the Court of Common Pleas of Hartford County and tried to the court before *Calhoun, J.* The court found the following facts:—

On the trial the plaintiff, to prove the existence of the judgment set forth in the first count of his complaint, offered in evidence a writ found among the papers of Martin Hollister, deceased, who on the 29th day of May, 1869, was a justice of the peace for the county of Hartford, and residing in Glastonbury. This writ was in favor of the present plaintiff and against the present defendant, was dated May 12th, 1869, was returnable before Martin Hollister, justice of the peace, at his office in Glastonbury, on the 29th day of May, 1869, was in assumpsit on the common counts, and demanded one hundred dollars damages. It also directed the officer serving it to leave a copy with John H. Post of Glastonbury as a garnishee. The officer's endorsement of service upon it stated that he left a copy with Post, the garnishee, as directed, and that a copy with the endorsement of his doings upon it was left at the usual place of abode of the defendant in Glastonbury, the defendant then residing there. Pinned to the writ was a paper in the handwriting of the plaintiff's clerk, in the words and figures following:

THOMAS HAYES to O. C. WEST, DR.

May 10, 1869.   To balance of account,        $100.

The plaintiff also offered in evidence an execution (where found did not appear,) signed by Martin Hollister, as a justice of the peace, and dated May 31st, 1869, the part of which reciting the judgment on which it was issued was as follows:—

"Whereas, Oramel C. West of said Glastonbury, on the 31st day of May, 1869, before Martin Hollister, Esq., Justice of the Peace for the county of Hartford, recovered judgment against Thomas Hayes of said Glastonbury for the sum of one hundred dollars damages, and for the sum of four dollars and one cent costs of suit, as appears of

record, whereof execution remains to be done:—These are therefore by authority of the State of Connecticut to command you, &c."

The officer's return on the execution was as follows:—

" HARTFORD, SS., *Glastonbury*, July 1, 1869.

" Then and there I made demand at the usual place of abode of the within named defendant for goods, moneys and chattels whereon to levy this execution, but none being shown me I therefore made demand of John H. Post, who was garnishee, attorney, agent, factor, trustee and debtor of said defendant, who paid me on this execution the sum of forty-two dollars and twenty-six cents."

It did not appear from the evidence that any other writ was ever issued in favor of the plaintiff and served on the defendant before the bringing of the present action.

To the admission of all the above evidence the defendant objected, and the same was received subject to the objection.

It was admitted that Justice Hollister died before the bringing of the present action.

Upon the foregoing facts the court held that there was not legal evidence of the judgment set out in the plaintiff's complaint, and rendered judgment for the defendant. The plaintiff appealed to this court.

*O. R. Wood*, for the appellant.

The question in this case is to be determined by the construction of the following statute: " When any suit has been heard and determined by a justice of the peace, who shall have neglected to make a record of the same, his *files* and *minutes* thereof shall be admissible as evidence in all actions brought on such judgment after his decease or removal from this state." Gen. Statutes, p. 440, sec. 34.

1. Under this act the evidence offered was admissible within the letter of the law; and the court erred in holding that it was not legal evidence. The execution containing full particulars of the judgment, and the officer's return

thereon, showing a partial satisfaction of the same, consti-
tute the chief and most valuable part of the justice's files.
The execution deliberately issued by the justice, and its
recitals of the judgment, are "minutes thereof" within the
meaning of the statute.

2. But this statute is a remedial one, and should therefore
be construed liberally. 1 Kent Com., 521; 1 Sharswood's
Blackstone, 89, n. 30. There can be no question that the
words of a remedial statute are to be construed largely and
beneficially so as to suppress the mischief and advance the
remedy. It is by no means unusual in construing a reme-
dial statute, it has been said, to extend the enacting words
beyond their natural import and effect, in order to include
cases within the same mischief. In remedial cases, says
Lord Mansfield, the construction of statutes is extended to
other cases within the reason and rule of them. Sedg. on
Stat. & Const. Law, 359. This rule is recognized by the
Supreme Court of this state in *Bissell* v. *Beckwith*, 32 Conn.,
509; *Darrow* v. *Express Co.*, 41 id., 525; *Olmstead's Appeal
from Probate*, 43 id., 123.

3. In the construction of all remedial statutes three
things should be considered—the old law; the mischief;
and the remedy. And it is the duty of the court so to con-
strue the law as to suppress the mischief and advance the
remedy. 2 Black. Com., 87. By the old law the only evi-
dence of a judgment of a justice was a full record thereof.
*Davidson* v. *Murphy*, 13 Conn., 213. Such records are very
seldom, if ever, made by justices of the peace in this state,
unless required for evidence or appeals, and in such case
they were then usually written out by the magistrate as
occasion required, from such memoranda or minutes as he
had made. The death of the magistrate made it impossible,
in most cases, to procure legal evidence of his judgments,
so that many of the judgments rendered by justices of the
peace were practically of no value, because of the plain-
tiffs' inability to establish their claims in court. Herein
was the mischief. The purpose of this statute was to
afford a remedy against such mischief as the application of

this old and rigid rule of evidence inevitably occasioned whenever the death of the magistrate had intervened. To hold as inadmissible the evidence offered in this case, would be *advancing the mischief by suppressing the remedy.*

4. Manifestly it was the intention of the legislature, by this act, to make admissible as evidence any of the files or minutes of the magistrate, which would have enabled him, if living, to write out such record of his judgments as would constitute legal evidence thereof. We therefore submit that the ruling of the court below is in violation of both the letter and the spirit of the statute, and ought to be overruled.

*S. F. Jones*, for the appellee.

1. What is the precise intent and meaning of the statute in question? Clearly this, that the minutes left by the justice, made originally for his own guidance in making up a formal record, shall themselves constitute or take the place of the formal record. This being so, it clearly and necessarily follows that what would be an insufficient record, would also be insufficient minutes if brought before the court in the form of minutes and not of a record. We may therefore in every case apply an infallible rule by taking the minutes and expanding them into a record, and then seeing whether the record would be a sufficient one. The file, return and execution, constituting the whole in this case, thus extended and put into narrative form and signed by the justice, would be as follows: "In a suit brought before me by Oramel C. West against Thomas Hayes on the 29th day of May, 1869, service was duly made on the defendant, the plaintiff laid in an account for $100, and on the 31st day of May, 1869, I issued an execution in favor of Oramel C. West against Thomas Hayes, upon a judgment described therein as rendered by me on the 31st day of May, 1869, for $100 damages and $4.01 costs." It needs only to read this record to see that it is totally insufficient. Notice what it omits: 1. That the parties appeared. 2. That the court was adjourned from the 29th to the 31st.

3. That the court rendered judgment in the case. 4. What that judgment was. The omission of the statement that the court rendered a judgment would be fatal of itself. The most vital thing for the court to have done is not mentioned as having been done at all. It will not do to say that the execution furnishes this statement.—(1.) The execution is not a minute, nor a part of the file. It merely proves that an execution was issued. It is no part of the record of the judgment.—(2.) If it be treated as a certificate that a judgment was rendered, then it has no effect beyond what it would have as a memorandum of a deceased person. But as such a memorandum it would be admissible only in suits by or against the estate of a deceased person. Gen. Statutes, p. 439, § 28.—(3.) This precise point has been decided in *Fitch* v. *Porter*, 8 Ired. Law, 511. In that case an execution was offered in evidence to prove a judgment recited in it. The court say (p. 512), "The exemplification of the record shows no judgment at all, but merely an award of execution upon a judgment recited therein to have been before rendered."—(4.) If the execution is admissible as evidence, it shows only a judgment rendered on May 31st, whereas the proper judgment should have been rendered on the 29th of May. The court cannot by a mere guess connect them. It might just as well by a guess connect matters six months apart. If the court can draw some inferences, this is one of those which it cannot draw. It is (*a*) a question wholly of fact; (*b*) wholly unaided by any other facts stated; (*c*) it is not in any sense a "necessary" inference.—(5.) The execution was not admissible because not found in the hands of any person who was a proper custodian of it. It is stated in the finding that "it did not appear where it was found." In *Phelps* v. *Hunt*, 43 Conn., 194, it is held that "where judicial records are offered as such, and in proof of the facts which they purport to state, they must, if originals, be brought into court by the official custodian of them, who can testify as to their character; or copies, certified by such custodian, may be introduced."

2. Assuming it to be the correct view that the statute

West *v.* Hayes.

merely allows the files and minutes to be introduced in the place of a formal record, and that omissions which would have been fatal in a record are also fatal in the minutes, unless supplied in either case by a "necessary inference," let us consider what omissions are fatal in either case. And here we would remark that decisions made before the statute was enacted, and which deal with records proper, are equally pertinent with those made later and which deal with "files and minutes,"—the same general rule applying to both. In *Davidson* v. *Murphy*, 13 Conn., 213, WILLIAMS, C. J., in giving the opinion, says (p. 218): "The minutes of the justice make it *probable* that the parties appeared, as the issue is stated; but that is a mere *inference.* The minutes add 'continued 26th September, 1836.' Now whether it was continued *on* that day or *to* that day, is nowhere said. * * But with these minutes the plaintiff also offers an execution, signed by the justice and counting upon the judgment declared upon. That an execution is not a record ·of the judgment is too apparent to require illustration. Neither the minutes of the justice, nor the execution signed by him, nor both, constitute a record." In *Wales* v. *Smith*, 13 Conn., 216, note, HOSMER, C. J., in commenting on some minutes left by a justice on a writ, says: "The record of a judgment on default contains the *time* when the cause was defaulted; but the memorandum contains no time. The record mentions the court and place; but this memorandum is silent as to both. It comprises the facts constituting the default, as that the defendant was called and failed to appear; but this memorandum contains no such fact. It closes with the conclusion of law, which essentially is the judgment; but this memorandum has no legal conclusion." Now if by statute these memoranda had been admissible as a substitute for the record, it is very clear that Judge HOSMER would have held them utterly insufficient. Yet they are far more complete than the memoranda in the case before the court. In *O'Connell* v. *Hotchkiss*, 44 Conn., 51, ·PARDEE, J., says (p. 53): "While we demand from the latter [a justice of the peace] *all necessary averments,* we

shall, in view of the circumstances under which he is usually called to the discharge of the duties of his office, *overlook some informalities in setting them forth.* Upon inspection of the record offered we find that, one particular excepted, it meets the strict requirements of this court in the case referred to ; and of HOSMER, C. J., in *Wales* v. *Smith,* cited in the note to that case. * * The history is full, and proceeds step by step, in due order of events, from the return day to the legal conclusion. We can mark every step in the progress of the court, unless we wilfully close our eyes." The case of *Ellsworth* v. *Learned,* 21 Verm., 525, goes further than any other one we have found in admitting proof of a judgment by imperfect minutes; but we desire that it be examined that the court may see how utterly below that case the present one falls. The omission of the minutes here would have been held fatal in any of the cases where the minutes were held sufficient.

CARPENTER, J. This is an action on a judgment rendered by a justice of the peace. The justice died without making a formal record of the judgment. The plaintiff offered in evidence a writ in his favor against the defendant, dated May 12th, 1869, returnable on the 29th, which seems to have been duly served. Attached to the writ was an account in the hand-writing of the plaintiff's clerk against the defendant for $100. This writ was found among the papers of the justice. The plaintiff also introduced an execution, where found does not appear, signed by the justice, dated May 31st, 1869, for the sum of $100 damages, and for the sum of $4.01 costs, which described the judgment as having been rendered on said 31st day of May. It did not appear that any other writ was ever issued in favor of the plaintiff against the defendant before the bringing of the present action.

To the admission of all this evidence the defendant objected, but it was received subject to the objection. The court held that there was not legal evidence of the judgment and the plaintiff appealed.

West *v.* Hayes.

The statute (Gen. Statutes, p. 440, sec. 34,) provides that "when any suit has been heard and determined by a justice of the peace, who shall have neglected to make a record of the same, his files and minutes thereof shall be admissible as evidence, in all actions brought on such judgment after his decease or removal from the state." The object of this statute is obvious; it is to enable a party in such cases to prove a judgment without a formal record. The mischief aimed at is apparent. It is a remedial statute and should be so construed as to advance the remedy and suppress all the mischief within its letter and spirit.

How far did the legislature intend to go? Was it intended that there should be in the minutes a reference to all the minor details of a formal judgment? Or was it intended that if there were minutes showing that a judgment was actually rendered with the date and the amount, the parties should have the benefit of a judgment? If the former, then it would seem to be necessary that they should show the appearance of the parties, the adjournments from time to time, if any, the pleadings, the decision of the court, damages, costs, and the date. Minutes so full, if signed by the justice, would constitute a record independent of the statute. *O'Connell* v. *Hotchkiss*, 44 Conn., 51. But we think the statute does not require that the minutes should be technically full and accurate; that it intended to dispense with record proof and open such cases to proof of an inferior character. To give effect to such evidence and carry out the intention of the legislature, we must hold that if the evidence satisfies the trier that a judgment of a certain amount was actually rendered, and that fact is found, it will be followed by the same legal consequences that follow a judgment proved by a record.

Ordinarily the minutes note the adjournments, the appearance of the parties, default or nonsuit as the case may be, the decision, damages, and costs. In this case there are no entries of minutes on the file. What is known is gathered from the files including the execution. From them we have all the elements of a valid judgment — the parties, the

decision, the amount, damages and costs, and the date. Some incidental circumstances appear only by inference or intendment, — the appearance of the parties, and whether judgment was rendered upon default or after trial. That the plaintiff appeared may be presumed. From the fact that the files show no pleadings perhaps it is a fair inference that the defendant made default. But this is not important. The material fact, a judgment, clearly appears.

But the files fail to show an adjournment, and the judgment appears to have been rendered two days after the return day of the writ. That fact occasions some doubt; but we have finally come to the conclusion that it is not necessarily fatal to the plaintiff's case.

A record imports verity and must be complete in itself. If it was the intention of the legislature that the same strict and rigid rules should be applied to files and minutes admitted in evidence under the statute, then it is agreed that the defect would be fatal. Such a construction however would in many instances defeat the manifest intention of the legislature, and we think that the statute should receive a more liberal construction. It clearly authorizes the judgment to be proved by other evidence than the production of the record. If so it is reasonable to presume that it contemplates that some incidental and minor circumstances, which ordinarily appear of record, may be supplied by intendment, or by way of inference from the facts disclosed by the files and minutes. The matter of adjournment may well be regarded as of this class. The files produced furnish strong evidence that the judgment rendered on the 31st day of May was rendered on the writ returned on the 29th. The amount demanded in the writ is $100. The account filed with it is for just $100, and the judgment described in the execution was for that amount. John H. Post is described in the writ as garnishee, and the officer's return on the execution shows that John H. Post as garnishee paid about $40 on the execution.

In addition to this the court finds that " it did not appear from the evidence that any other writ was ever issued in

favor of the plaintiff and served on the defendant before the bringing of the present action." This, although a species of negative finding, is nearly equivalent to a direct finding that this was the only writ. Had there been another it could easily have been shown. If so important a fact existed we must presume that the defendant would have shown it. There is no presumption that there was another writ, while there is some presumption that there was not. It would be unusual for two suits in assumpsit between the same parties to be pending at the same time, the writ in one returnable on a Saturday and the other on the Monday following. Assuming that there was but one writ, the evidence is well nigh conclusive that the writ, judgment and execution are parts of one and the same proceeding.

When it is clear that a judgment exists it is the duty of the court to make every reasonable intendment in favor of sustaining it. Upon that principle, in a case like this, the court ought to presume an adjournment from Saturday until Monday, unless the discrepancy is in some other way accounted for.

But this is mainly an inference of fact; and we cannot reverse a judgment or grant a new trial merely because the court failed to draw the proper inference from evidential facts. We are to look then and see just what was done in the court below.

The evidence was at first admitted subject to objection. The final conclusion of the court is in these words: "Upon the foregoing facts the court held that there was not legal evidence of the judgment." There may be some doubt as to what the judge really intended by this. If he meant sufficient evidence we should suppose that he would have said so. There is a clear distinction between legal evidence and sufficient evidence. They are not convertible terms. Sufficient evidence is of course legal, but legal evidence may be and often is clearly insufficient. One term applies to its admissibility and the other to its weight. Legal evidence is admissible; if not legal it is not admissible. As we interpret the record the court practically rejected the

evidence, probably on the ground that it did not expressly cover every point essential to a complete record. As the omissions are of such a character that they may be supplied inferentially from the facts which do appear or by reasonable intendment, we think the court erred.

As it was competent for the court to have found from the evidence that there was a legal judgment, we cannot say that no injustice was done.

There is error in the judgment and it is reversed.

In this opinion the other judges concurred.